Case 92—PETITION EQUITY—February 7.

# Lewis v. Taylor, &c.

APPEAL FROM NELSON CIRCUIT COURT.

1. TRUSTS.—In every case where trust money can be distinctly traced into land, a court of equity will fasten a trust upon the land in favor of the person beneficially entitled to the money.

Where a husband obtained a decree for the sale of land which he held under a deed to him in trust for his wife and children, the wife and her father, the donor of the land, consenting to the sale upon condition that the proceeds should be reinvested for the benefit of the wife and children in a tract of land held by the husband in his own right, although the husband, upon the sale of the trust property, failed to convey to the wife and children the land in which the proceeds were to be reinvested, yet as he, from that time, openly treated it as trust property, the equity of the wife and children can not be ques-tioned, and they are entitled to the land as against a creditor who had the land levied on and sold as that of the husband, and became the purchaser at the execution sale, especially as notice of the trust was publicly given at the time of the sale.

2. PURCHASER WITHOUT NOTICE.—A judgment creditor deriving title to land under an execution in his favor is not a purchaser for value, and can not hold the land as against persons for whom the debtor held in

Lewis v. Taylor, &c.

trust, even though he had no notice of the trust at the time of his purchase. And as the plaintiffs in the execution in this case were executors, they must be regarded as acting as mere agents for the devisees in purchasing the land at the execution sale, and one of the devisees who, since the sale under the execution, has purchased the interests of the other devisees, can not be regarded as an innocent purchaser for value.

E. E. McKAY FOR APPELLANTS.

The appellants are *bona fide* purchasers without notice, and should be protected by the court.

JOHN S. KELLEY FOR APPELLEES.

1. The land in controversy was trust property. (Story's Eq. Jur., sec. 1210; Bispham's Eq., sec. 86; Perry on Trusts, sec. 127; Gen. Stats., chap. 65, art. 1, sec. 19.)

2. Mrs. Lewis and her brothers and sister who purchased this land under the execution sale, are none of them purchasers in the sense that they are enabled to avail themselves of want of notice, even admitting the absence of notice at the time of the execution sale. (Bispham's Eq., sec. 276; Story's Eq. Jur., sec. 1503; Miller and wife v. Edwards &c., 7 Bush, 398.)

3. Notice to B. B. Summers, the acting executor of their father, was notice to them. (Bispham's Eq., secs. 262, 263, 266, 267, 268; Story's Eq. Jur., secs. 400. 408)

In the case of Farris v. Dunn and wife, 7 Bush, 277, the court sustains the *cestui que trust* and their claim even as against mortgages executed by the legal title holder.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

In the year 1857, J. H. Taylor became the owner of a tract of land in the county of Nelson by a regular conveyance from one Samuel Ross.

In the year 1884 this land was levied upon and sold to satisfy an execution upon a judgment rendered in the Nelson Circuit Court in favor of the executors of B. B. Summers, deceased, against Taylor, and purchased by the executors for the benefit of the estate they represented. After this, the appellant, Sarah A. Lewis, one of the devisees of Summers, purchased out the

other devisees, or their interest in the land, and in that way derived title, as she claims, to the entire tract. Mrs. Lewis then sold and conveyed the land to one Sherman, and placed him in possession, she or her vendors having obtained possession under and by virtue of the sheriff's deed.

The wife and children of J. H. Taylor, who are the appellees in this appeal, claim that the land purchased by the executors of Summers was held by J. H. Taylor in trust for them, of the existence of which the executors of Summers had notice when they made their purchase under the execution for the benefit of the devisees of Summers. They filed their petition in equity to enforce the trust, and made Sherman and his vendor, Mrs. Lewis, defendants to the action, and upon the hearing the chancellor adjudged in favor of the appellees, the wife and children of J. H. Taylor.

The trust is alleged to have been created in this manner :

In the year 1857, the father of Mrs. Taylor (H. S. Cochran) conveyed to her husband, J. H. Taylor, in trust for herself and children, the one-half of a tract of land lying in the county of Bullitt. In March, 1857, J. H. Taylor, the husband, filed his petition as trustee, &c., in the Bullitt Circuit Court, making his wife and the donor of the land defendants, asking for the sale of this fifty acres of land held in trust, that the proceeds m'ght be invested in the land purchased by J. H. Taylor (the husband) of Ross, and the same levied on and sold under the Summers execution, by virtue of which Mrs. Lewis, who sold to Sherman, obtained the title.

Cochran, the father of Mrs. Taylor, and the latter, filed answers consenting to the sale on condition that the Nelson county land was conveyed in the same way she held the Bullitt county land. Commissioners were appointed to value the Bullitt county land and also the Nelson county land, and made their report as to the values and also advising the reinvestment. Mrs. Taylor's land was then decreed to be sold, and Taylor, the husband and trustee, was ordered to make the sale, which was done, and his report stated that the title as to the one hundred and seventy-six acre tract of land in Nelson was perfect.

The Bullitt land of the wife sold for seventeen hundred and fifty dollars. The sale was approved, but no deed was ever made to Taylor's wife and children, or the title perfected by any order of the Bullitt Circuit Court. Taylor was in possession of the Nelson county land at the time he sold his wife's land as commissioner under his purchase from Ross ; and while no deed was made to his wife and children, from the date of the sale of his wife's land, in the year 1858, up to the year 1880, when he removed with his family to Texas, he held and claimed this one hundred and seventy-six acres of land in Nelson as trustee for his wife and children. The manner of his holding was open and notorious, and seems to have been known to the residents of the neighborhood in which Taylor lived and the land was located. He received the money from the proceeds of his wife's land, and discharged the liens upon it held by Ross, of whom he purchased, the purchase price being about thirteen hundred and thirty dollars, and at no time after the

year 1858 asserted any claim to the land in his own right. He listed the land for taxation as trust property, insured the buildings upon it for the use and benefit of his wife and children, and rented the land out as trustee.

When Taylor left Nelson county for Texas in the year 1880, this land was then in the possession of a tenant, to whom he had leased it for a term of years. He leased it as trustee, and appointed, when leaving, J. D. Elliott, agent and attorney for his wife and children to protect their interest.

When this land was sold under execution by the executors of Summers, and before the purchase by the executors, Elliot, the agent and attorney, announced publicly at the court-house door that the land was not the property of Taylor, but was held in trust by him for his wife and children.

The creditor was not only selling trust property, but was notified by Elliot that Taylor had no title, and the executors disregarding the claim of these appellees, made the purchase with the full knowledge of appellees' equity.

The husband and father had held the possession for his wife and children as trustee from the date of the sale of his wife's land up to the year 1880, when he left the State, a period of twenty-two years, and when leaving, his tenant, holding under him as trustee, was in possession.

The levy and sale of this land under the Summers execution was made in the year 1884, near twenty-six years after this trust was created, and by reason of an equity in the wife and children that cannot be questioned.

There can be no doubt that this land in controversy was affected with this trust, and that the trust funds derived from the sale of the wife's land were invested in it, and "in every such case," says Mr. Justice Story in his work on Equity Jurisprudence, section 1210, "where the trust money can be distinctly traced, a court of equity will fasten a trust upon the land in favor of the person beneficially entitled to the money." Here the trust property was the land itself. It was invested by the original trustee under the sanction of the chancellor, but from neglect or oversight, the conveyance to the wife was not executed. There was no wrongful appropriation of the money by the husband, but the act of investment by him was what the chancellor required and what equity compelled him to do.

Can then, the appellant, Mrs. Lewis, assert her right because her father, the devisor, was a creditor of J. H. Taylor, who, upon the face of the record, was the holder of the legal title, or does she occupy the position of an innocent purchaser, without notice, having paid a valuable consideration for the land?

It is true she purchased the interest of the other devisees in this land and acquired all the title that could pass under the purchase by the executors under the execution sale, but it appears from the record, and in fact such was the necessary result of the purchase by the executors, that it was purchased for the benefit of the estate, and one of the executors was a devisee under the will of the testator.

The purchasers had direct and express notice of this trust when the execution sale was had, and the mere

sale and transfer from the one devisee to the other after the sale, did not make them bona fide purchasers for value without notice so as to affect this trust. It also appears that these parties, as well as their testator, lived in a short distance of this land for years, and the manner of the holding by Taylor being so open and notorious, it is manifest that all these parties knew of the existence of the trust. The executors and devisees of Summers occupied the same position with reference to the trust property that their testator did. They were creditors of the trustee, with the executors, in fact, acting as the mere agents of those entitled under the will. "Judgment creditors," says Bispham's Principles of Equity, "deriving title under an execution, are not purchasers entitled to avail themselves of this plea," that is, the want of notice. The same doctrine is announced by Mr. Justice Story in his Equity Jurisprudence, section 1903. The substance of the rule established is, that a judgment creditor of the trustee is not a purchaser for value in a case like this, so as to affect the equity of the beneficiaries of the trust.

The distinction between a bona fide purchaser for value without notice, and that of a mere creditor, as recognized by the text-books, is, that one parts with his money upon the faith of what appears to be a perfect title, and as to the creditor he loses nothing. And the effort to enforce the purchase against as pure and long continued equity as is established in this case, can not prevail.

Sherman, who purchased of Mrs. Lewis, is not appealing, and for the reason doubtless he has not, as the record shows, paid the purchase money, and, therefore, his purchase can not affect the trust property.

The judgment below finds that the appellees are entitled to the money invested in the land, and fixes that amount at thirteen hundred and thirty dollars, directing the land sold to satisfy this claim of the appellees. There is no cross-appeal, and perceiving no error in the judgment affecting the rights of the appellants, it is affirmed.